**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CITY OF PAINESVILLE, OHIO, | ) | CASE NO. 1:26-cv-1433 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| BROWNING-FERRIS INDUSTRIES OF | ) | **ORDER DENYING PRELIMINARY** |
| OHIO, INC., | ) | **INJUNCITION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court are Plaintiff City of Painesville, Ohio's ("City") motion for a temporary restraining order and preliminary injunction ("TRO Motion") (ECF No. 1-1, PageID #1–15). For the reasons that follow, the TRO Motion is **DENIED**.

## I.      PROCEDURAL BACKGROUND

On June 23, 2026, the City filed a Verified Complaint against Defendant Browning-Ferris Industries of Ohio, Inc. ("Republic") in Lake County Court of Common Pleas. (ECF No. 1-1, PageID #16–24). The complaint generally alleges that Republic and the City entered into a written contract for residential solid waste collection and disposal within the City ("Contract") (*Id.* at PageID #25–80), that contract terminates at the end of June 2026, and Republic is breaching the terms of the contract by charging a $50 cart "collection fee" to the City's residents for retrieval of tote carts at the termination of the Contract. (*Id.* at PageID #17–21). The complaint also alleges that the parties executed an Addendum to the Contract ("Addendum") on April 21, 2025 (*Id.* at PageID #81), which allowed Republic to charge a $50 "Delivery/Removal/Exchange Fee" for a customer/resident who requested an additional cart or the removal of an existing cart, but the Addendum did not create a universal end-of-contract "collection fee." (*Id.* at PageID #18, ¶ 10).

1

The City asserts two causes of action: (i) Breach of Contract (Count One); and (ii) Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction (Count Two).  (*Id.* at PageID #22–24).

The same day, the City filed the TRO Motion.  (ECF No. 1-1, PageID #1–15).  In the complaint and the TRO Motion, the City requests that the Court: (i) enjoin Republic from charging billing, demanding, collecting, or attempting to collect any cart pickup, cart retrieval, or cart removal fee not expressly authorized by the Contract; (ii) order Republic to refund any of the cart collections fees they have received within 48 hours; and (iii) send a "correction notice" to all affected residents within 48 hours stating that collection of the disputed fee has been suspended pending court order.  (ECF No. 1-1, PageID #9, 24).

On June 24, 2026, Republic removed the case to the Northern District of Ohio pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 on the basis of the Court's diversity jurisdiction.  (ECF No. 1).  On June 26, 2026, the Court held a Temporary Restraining Order Hearing ("TRO Hearing"), in which testimony was taken, certain exhibits were admitted, and post-hearing briefs were scheduled.  (Minutes of proceedings [non-document] dated June 26, 2026).  On July 2, 2026, Republic filed its response in opposition to the TRO Motion.  (ECF No. 6).  The City filed its reply in support of the TRO Motion on July 9, 2026.  (ECF No. 7).

## II.    LEGAL STANDARD

A preliminary injunction is an extraordinary and drastic remedy that is only appropriate where a movant establishes circumstances that clearly demand it.  *See Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978) (quoting *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974)); *see also James B. Oswald Co. v. Neate*, 98 F.4th 666, 672 (6th Cir. 2024); *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  By

preventing that harm and preserving the status quo between the parties, a preliminary injunction protects a court's ability to decide the case on its merits.  *Stenberg*, 573 F.2d at 925.

Courts decide whether to take this extraordinary measure by considering four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction."  *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017).  Ultimately, whether to grant such relief is a matter within the discretion of the district court.  *See Certified Restoration*, 511 F.3d at 540–41.

## III.    ANALYSIS

### A.    Likelihood of Success on the Merits

First, the Court must consider whether the City has demonstrated a strong likelihood of success on the merits of the claim underlying the preliminary injunction.  *Certified Restoration*, 511 F.3d at 543.  Although the City does not have to prove its case in full at this stage in the proceedings, it must show more than a mere possibility of success.  *See Certified Restoration*, 511 F.3d at 543.  While no one factor carries controlling weight, *Michigan State v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997), the first—whether the movant is likely to succeed on the merits—is generally considered the most important.  *Higuchi Int'l Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400, 404 (6th Cir. 2024).  If the movant is unlikely to succeed on their claim anyway, a court will not bother enjoining the opposing party.  *Id.*

"Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach."  *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465

(6th Cir. 2012) (citing *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)).  The parties do not dispute the existence of a contract or performance by the plaintiff (the City).  The parties primarily dispute whether there was a breach by the defendant (Republic).

The TRO Motion argues that Republic breached the Contract because: (i) it has notified the City, and has begun to, charge City residents/customers a "collection fee" which is associated with the retrieval and removal of refuse carts based on the termination of the Contract (which occurred on 6/30/2026); and (ii) the Contract contains no such provision for a "collection" fee. (ECF No. 1-1, PageID #6).  Republic responds that the City has not demonstrated a likelihood of success on the merits of its breach of contract claim for three reasons.  First, Republic agues that the City has failed to present the "complete" Contract, which prevents the Court from determining the rights of the parties under the Contract with sufficient certainty, because the City has failed to provide any executed document reflecting the parties' intention when the Contract was extended in 2016.  (ECF No. 6, PageID #102–03).  Second, Republic argues that the City has failed to identify any provision in the Contract or the Addendum prohibiting Republic from charging a "collection fee" and the Addendum expressly authorizes a $50 fee for "delivery/removal/exchange."  (*Id.* at PageID #103–04).  Third, Republic argues that the City has failed to demonstrate it has suffered any damages as a result of the alleged breach.  (*Id.* at PageID #104–05).

The City replies that the Contract does not include any "collection fee" provision associated with end of the Contract and Republic's corporate representative admitted that its other contracts with municipalities in Ohio include explicit language for such fees.  (ECF No. 7, PageID #117–18).  It further argues that a reasonable interpretation of the clear language in the Addendum is that it creates a collection fee for any new/additional carts requested by residents after the Addendum

4

went into effect in 2025 but it did not create a universal collection fee for carts originally provided under the Contract; thus, any attempt to impose a $50 collection fee for all carts constitutes a breach of the contract.  (*Id.* at PageID #118–19).  Finally, the City argues that Republic's argument concerning the lack of the "complete contract" is irrelevant because the Contract and Addendum clearly suggest that any additional addendums have no bearing on the determination of whether there is an end-of-contract collection fee.  (*Id.* at PageID #120).

The Court first notes that the City appears to have changed its tack.  The complaint alleges that the Contract *and* the Addendum do not contain any provision for an end-of-contract "collection fee," (ECF No. 1-1, PageID #19, ¶¶ 13–17), while its post-hearing brief now argues that the Addendum does provide for such a collection fee with respect to any new/additional carts ordered after the Addendum went into effect, (ECF No. 7, PageID #118–19).  The TRO Motion simply states that Republic has committed breach of contract by charging any "collection fee" and does not distinguish between carts initially provided under the Contract and any post-Addendum carts.  Plaintiff's change in approach creates some confusion, which is heightened by the general request for injunctive relief as to all collection/retrieval fees in the TRO Motion with no carveout for post-Addendum carts.  It also creates issues with Plaintiff's evidence establishing a breach of contract.  The City relies on Plaintiff's Exhibit C, which is an invoice of a customer/resident who was charged the disputed "collection fee" for two carts.  (*See* Pl.'s Ex. C).  But the invoice does not demonstrate whether this resident received one or both carts after the Addendum went into effect.

The Court also notes concerns regarding the missing extension agreements.  The Contract provides for a seven-year term starting on May 24, 2016 and ending on June 30, 2023, with a mutual option for an additional three years.  (ECF No. 1-1, PageID #17, 25, 43).  At the TRO

5

Hearing, City Manager and Public Safety Director Doug Lewis testified that the Contract had been extended the additional three years, but the City did not provide any executed agreement or other document that verifies the execution of the three-year extension.  The Court asked questions concerning the extension of the Contract at the TRO Hearing, and Republic raised the issue of the missing extension documents in its response brief.  (ECF No. 6, PageID #102–03).  The City contends that any missing extension agreement/document has no bearing on the Court's determination of whether the Contract authorizes an end-of-contract collection fee.  (ECF No. 7, PageID #120).  The Court disagrees.  Any extension agreement or authorization may contain provisions that might have amended the original terms of the Contract, including the addition of an end-of-contract collection fee.  Thus, the missing document(s) might be relevant to the Court's analysis.  That said, the Court notes that Republic has made no argument or assertion that the missing addendum contained any alteration to the terms of the Contract, or the addition of a collection fee, when the three-year option was executed.

Based on the exhibits and record before it, the Court would find that it is likely the City would succeed on its breach of contract claim against Republic, to the extent that Republic breached the Contract by charging residents a collection fee for any pre-Addendum carts.  There is no provision in the Contract that provides for an end-of-contract collection fee for those carts provided to residents.  At the TRO Hearing, Kyle Sonagere, Republic's General Manager, admitted as such.  By contrast, the Contract states that Republic will provide one free refuse tote cart to each subscribing resident.  (ECF No. 1-1, PageID #43, 50).  The Addendum addresses the ability of residents to request a second cart for their home and sets forth the rates for this specific additional service.  (ECF No. 1-1, PageID #81).  The Addendum sets forth a "Delivery/Removal/Exchange" fee of $50, but it is found in an exhibit chart labeled "Pricing for Additional Cart(s)."  (*Id.*).  The

6

Addendum makes no mention of this additional fee applying to any of the free carts originally provided under the Contract, nor does it state that there is any alteration to the original terms of the Contract.  As argued by the City, the reasonable interpretation of the Addendum is that it adds a collection fee for any new/additional carts requested after the Addendum went into effect (2025 to 2026), not that it created a universal end-of-contract collection fee for all pre-Addendum carts.

Nevertheless, in light of the Court's concerns with Plaintiff's change in position and the missing extension agreement/document, the Court cannot fully conclude that the City has shown a strong likelihood of success on the merits.  That is not to say that the City could not cure this issue by filing a renewed motion for preliminary injunctive relief and also providing additional evidence to support the merits of its claim.  However, there is a more fundamental flaw with the City's request for preliminary injunctive relief that is discussed in the section below.

**B.      Irreparable Injury**

The second factor that the Court must consider "is whether the plaintiff will suffer irreparable injury without the injunction." *Certified Restoration*, 511 F.3d at 543.  "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington–Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).  Similar to likelihood of success on the merits, the second factor—whether the movant would suffer irreparable injury—is considered an "indispensable" requirement for a temporary restraining order or preliminary injunction. *Fischer v. Thomas*, 78 F.4th 864, 868 (6th Cir. 2023); *Ohio v. Becerra*, 87 F.4th 759, 783 (6th Cir. 2023) ("A showing of irreparable harm is an indispensable p[r]er[e]quisite for the issuance of a preliminary injunction."). Thus, without a showing of immediate, irreparable harm, the Court cannot issue a TRO or a preliminary injunction. Notably, "'mere economic loss does not constitute irreparable injury,' because it is compensable

by damages." *TowerCo 2013, LLC v. Berlin Twp. Bd. of Trs.*, 110 F.4th 870, 889 (6th Cir. 2024) (quoting *Ohio ex rel. Celebrezze v. Nuclear Regul. Com.*, 812 F.2d 288, 291 (6th Cir. 1987)).

The TRO Motion asserts that the City will suffer the following irreparable harm absent injunctive relief:

> a. Confusion among residents;
> b. Interference with the orderly transition of municipal refuse collection services;
> c. Administrative burdens on City government;
> d. unauthorized payments by residents to Republic and/or damage to a resident's credit rating if the resident does not pay the unauthorized charges;
> e. unauthorized money being taken out of customer accounts because of the auto-pay function;
> f. Potential disruption of essential public services;
> g. Harm that cannot be adequately remedied by monetary damages.

(ECF No. 1-1, PageID #6–7). Republic responds that the City has failed to establish irreparable harm because: (i) the only alleged injury identified at the TRO Hearing were three City departments receiving phone calls from residents regarding "collection fees" on their invoices; (ii) the City failed to provide evidence to substantiate the volume or impact of these calls; and (iii) and damages based on this theory would be compensable through monetary damages. (ECF No. 6, PageID #106–07). It further argues that the City not only lacks standing to assert damages for potential harm to residents, but any impact on residents also paying the disputed fee is purely an economic loss remediable through monetary damages; nor is there any evidence that the residents' credit will be harmed if they dispute any collections attempt. (*Id.* at PageID #107).

The City replies that unauthorized charges and threats of collection are irreparable harm because many residents are living paycheck to paycheck, such charges will cause economic hardship and anxiety, and that any damages are not readily remediable through later damages. (ECF No. 7, PageID #120). The City further argues that "[t]he administrative and reputational harms to the City stemming from resident complaints, disruption of transition plans, and

interference with municipal operations constitute additional irreparable harm." (*Id.* at PageID #122).

First, the City fails to address Republic's argument that it lacks standing to assert damages on behalf of its residents because it must identify immediate, irreparable harms that the City itself will suffer.  (ECF No. 6, PageID #106–07).  The Court has the same standing concerns.  By failing to address this standing issue, the City has effectively conceded this argument and waived any opposition. *C.f. Santo's Italian Café LLC v. Acuity Ins. Co.*, 508 F. Supp. 3d 186, 207 (N.D. Ohio 2020) ("It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.") (collecting cases).

Even considering the alleged harms to the City's residents, the Court finds that they are not irreparable injuries because they involve purely economic losses.  If a resident were charged unauthorized collection fees and had paid those fees (through autopay or other means), that injury is compensable through monetary damages.  The City argues that potential damage to residents' credit (if they refuse to pay the disputed collection fees and are sent to collection) constitutes immediate, irreparable harm.  It provides no legal authority for this proposition.  Nor is the Court persuaded that any potential harm to a resident's credit score constitutes irreparable harm.  Any potential harm to a resident's credit score would be compensable through monetary damages and can be further remedied by a subsequent order by the Court to remove the disputed debt from any offending credit report.  This conclusion comports with the weight of authority, with courts

routinely concluding that harm to a party's credit score does not amount to irreparable damage. *See, e.g.*, *Evans v. City of Ann Arbor*, 2021 U.S. Dist. LEXIS 71606, 2021 WL 1405171, at *2 (E.D. Mich. April 14, 2021) ("Plaintiffs do not explain how having a lower credit score will result in immediate and irreparable harm. . . . Economic damages such as lost revenue are generally insufficient to support emergency injunctive relief."); *Williams v. Transworld Sys. Inc.*, No. 25-cv-09527-HSG, 2025 LX 509998, at *4–5 (N.D. Cal. Nov. 26, 2025) ("For these reasons, courts presented with similar TRO applications have typically found that the plaintiff has not shown irreparable harm and noted that 'harms to [a plaintiff's] credit score and finances more broadly are fundamentally economic harms, unsuitable for a temporary restraining order.'" (collecting cases)); *Silva v. Volkswagen Grp. of Am., Inc.*, 2025 U.S. Dist. LEXIS 4646, 2025 WL 819076, at *2 (C.D. Cal. Jan. 9, 2025) ("Harms to Plaintiff's credit score and finances more broadly are fundamentally economic harms, unsuitable for a temporary restraining order."); *Royer v. Discover Fin. Servs.*, No. 22-1429, 2023 U.S. Dist. LEXIS 199494, at *36–37 (E.D. Pa. Nov. 7, 2023) (collecting cases).

To the extent that the City argues "administrative" injury stemming from resident complaints (based on the disputed collection fee), disruption of the transition to the new collection service, and interference with municipal operations, the City has not demonstrated how any of these injuries are not compensable through monetary damages. Nor has the City cited authority to support such a proposition. To the extent the City cites confusion among residents and reputational harms, the City provides no explanation or clarification regarding these alleged injuries or any evidence to support such damages. More importantly, the Court is not convinced that these injuries would not also be compensable through monetary damages.

Accordingly, the Court finds that the City has failed to establish that there would be irreparable harm if no preliminary injunctive relief were granted at this time.  Because the lack of irreparable harm is sufficient to deny relief, the Court will forego analysis of the final two factors.

## IV.   CONCLUSION

For the foregoing reasons, the City's TRO Motion (ECF No. 1-1, PageID #1–15) is **DENIED**.

   **IT IS SO ORDERED.**

Date: July 16, 2026

_____

**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**